

# The Attorney General of Texas

March 5, 1985

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

901 Texas, Suite 700
.ouston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Fred J. Agnich
Chairman
Committee on Environmental Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-298

Re: Whether the state of Texas must sell commercial fishing licenses to a person residing in a state which does not offer equivalent licenses to Texas residents

Dear Representative Agnich:

You request an Attorney General's Opinion concerning section 47.002 of the Parks and Wildlife Code, which sets fees for a commercial fisherman's license. It establishes different fees for Texas residents and nonresidents.

Your letter provides the following information:

> The state of Arkansas restricts the sale of its commercial fishing licenses to an area in the Red River where its south bank is the boundary line between Arkansas and Texas. In no other area of the state are Texas residents allowed to fish commercially. On the other hand, Texas allows the sale of licenses to Arkansas residents to commercially fish in any waters in our state.

You ask two questions:

> 1. Is the state of Texas required to sell reciprocal licenses to a state that restricts our Texas residents?

> 2. Could Texas put a similar restriction on the sale of commercial licenses to the state of Arkansas?

Section 47.002 of the Parks and Wildlife Code provides an answer to your first question:

(a) No person may engage in business as a commercial fisherman unless he has obtained a general commercial fisherman's license.

(b) The license fee for a general commercial fisherman's license is $15. Fifty cents of the fee may be retained by the issuing agent, except an employee of the department.

(c) The license fee for a nonresident general commercial fisherman's license is the amount that a Texas resident is charged in the state in which the nonresident is residing for a similar license or $25, whichever amount is the larger. The department shall publish a list of nonresident fees according to the fees of each state and may alter the fee amounts in the list before September 1 of each year for the remainder of that license year. Fifty cents of the fee may be retained by the issuing agent, except an employee of the department.

A "commercial fisherman" is defined as "a person who catches fish, oysters, or other edible aquatic products from the water of this state for pay or for the purpose of sale, barter, or exchange." Parks and Wild. Code §47.001(1).

Section 47.002 provides for the sale of nonresident general commercial fisherman's licenses for the fee described in subsection (c). It does not authorize the Parks and Wildlife Department to refuse a commercial fisherman's license to nonresidents for the reason that their state discriminates against Texans in the issuance of commercial fishing licenses.

Your second question raises an issue of federal constitutional law. Nonresidents are protected by the Privileges and Immunities Clause, article IV, section 2 of the United States Constitution, which guarantees "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." In any state, nonresidents are to have the same privileges and immunities as residents of that state. Baldwin v. Fish and Game Commission of Montana, 436 U.S. 371 (1978); Hague v. CIO, 307 U.S. 496 (1939). This clause has been interpreted to prevent a state from imposing unreasonable burdens on citizens of other states in their pursuit of common callings within the state. Baldwin v. Fish and Game Commission of Montana, supra.

Discrimination between residents and nonresidents is permissible where there is a substantial reason for the difference of treatment.

United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden, 104 S.Ct. 1020 (1984). The substantial reason must, however, show "that noncitizens constitute a peculiar source of the evil at which the statute is aimed." Toomer v. Witsell, 334 U.S. 385 (1948). Retaliation against another state's discriminatory legislation does not provide the required justification. Austin v. New Hampshire, 420 U.S. 656, 668 (1975). Travis v. Yale & Town Manufacturing. Co., 252 U.S. 60, 82 (1920).

Commercial fishing has been recognized as an occupation protected by the Privileges and Immunities Clause. Toomer v. Witsell, supra. Cf. Baldwin v. Fish and Game Commission of Montana, 436 U.S. 371 (1978) (recreational big-game hunting in Montana is not a right protected by Privileges and Immunities Clause). In Toomer v. Witsell, the United States Supreme Court declared unconstitutional a South Carolina statute which virtually excluded nonresidents from commercial shrimp fishing in South Carolina waters. Toomer v. Witsell, supra, at 396-97. For each shrimpboat owned by a nonresident, South Carolina required a license fee one-hundred times that paid by residents. Id. at 389. The court found no reasonable relationship between the state's alleged purpose of conservation and this discriminatory statute. There was no "reasonable relationship between the danger represented by non-citizens, as a class, and the severe discrimination practiced upon them." Id. at 399. Nor did a state's interest in its wildlife justify its unreasonable interference with a nonresident's right to pursue a livelihood in a state other than his own. Toomer v. Witsell, 334 U.S. 385 (1948). See also Dobard v. State, 233 S.W.2d 435 (Tex. 1950).

We conclude, in answer to your second question, that Texas may not discriminate against the residents of other states in the sale of commercial fishing licenses unless such discrimination is supported by a "substantial reason" as required by the United States Supreme Court. Retaliation against Arkansas for apparent discrimination against Texas residents does not constitute the requisite reason.

## S U M M A R Y

Section 47.002 of the Parks and Wildlife Code provides for the sale of nonresident general commercial fisherman's licenses for the fees set out in subsection (c). The Privileges and Immunities Clause, article IV, section 2 of the United States Constitution prohibits Texas from discriminating against residents of other states in the sale of commercial fishing licenses unless a substantial reason supports the discrimination. Retaliation against another state for apparent

discrimination against Texas residents does not constitute the required substantial reason.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison &
Jack Carter
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton